**Connell Foley LLP**
One Newark Center
1085 Raymond Boulevard, 19th Floor
Newark, New Jersey 07102
(973) 436-5800
Attorneys for Plaintiff, Barnabas Health, Inc.
d/b/a RWJBH Corporate Services Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BARNABAS HEALTH, INC. D/B/A RWJBH CORPORATE SERVICES INC., | Civil Action No. 21- |
| Plaintiff, | |
| v. | |
| TOUCHSTONE TECHNOLOGY CONSULTING OPS. INC. D/B/A TOUCHSTONE HEALTHCARE SOLUTIONS; BRIAN W. MEAD; JOHN DOES 1-10 (names being fictitious for individuals whose identities are currently unknown); and ABC ENTITIES 1-10 (names being fictitious for individuals whose identities are currently unknown), | **COMPLAINT** |
| Defendants. | |

Plaintiff Barnabas Health, Inc. d/b/a RWJBH Corporate Services Inc., complaining of Defendants Touchstone Technology Consulting Ops. Inc., d/b/a Touchstone Healthcare Solutions, Brian W. Mead, John Does 1-10, and ABC Entities 1-10 (collectively, "Defendants"), alleges as follows:

**SUMMARY OF ACTION**

1.     In this action, plaintiff seeks judgment against the Defendants for fraud as well as breach of both the express and implied terms of a valid contract for the delivery of personal protective equipment, specifically isolation gowns.

**THE PARTIES**

2.    Plaintiff Barnabas Health, Inc. d/b/a RWJBH Corporate Services Inc. ("RWJBH") is a not-for-profit corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 95 Old Short Hills Road, West Orange, New Jersey 08052.

3.    Defendant Touchstone Technology Consulting Ops. Inc., d/b/a Touchstone Healthcare Solutions ("Touchstone"), on information and belief, is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 8 Beaver Brook Road, Ridgefield, Connecticut 06877.

4.    Defendant Brian W. Mead ("Mead"), on information and belief, is a shareholder of Touchstone and a citizen of the State of New Jersey, residing at 8 Beaver Brook Road, Ridgefield, Connecticut 06877.

5.    John Does 1-10, being fictitious names, are individuals whose true identities have not yet been discovered that have acted in active concert with defendant Mead or otherwise participated in the wrongful acts against Plaintiff that are set forth herein.

6.    ABC Entities 1-10, being fictitious names, are entities whose true identities have not yet been discovered that have acted in active concert with defendant Mead or otherwise participated in the wrongful acts against Plaintiff that are set forth herein.

**JURISDICTION**

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and all defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

8.    This Court has personal jurisdiction over Defendants by virtue of the fact that the parties' contract was to be performed in New Jersey and by Section 8 of the April 28, 2020

Purchasing Agreement by and between Touchstone and RWJBH (the "Purchase Agreement"), described in more detail below, pursuant to which Defendants consented "[t]hat this agreement shall be governed by the laws of the State of New Jersey, irrespective of choice- or conflict-of-law provisions."

## VENUE

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Plaintiff and Defendants maintain offices and/or transact business in the State of New Jersey, and the Defendants' wrongful acts or omissions giving rise to the claims asserted in this action substantially and materially occurred in the State of New Jersey.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Purchase Agreement

10.      On or about April 28, 2020, RWJBH entered into the Purchase Agreement with Touchstone for the purchase of 500,000 isolation gowns. A true copy of the Purchase Agreement is attached hereto as Exhibit A.

11.      As set forth herein, upon information and belief, both before and at the time the Defendants entered into the Purchase Agreement, they had no intention or ability to comply with its terms. Instead, the Defendants fraudulently induced plaintiff RWJBH to enter into the Purchase Agreement by misrepresenting the Defendants' present ability to perform the obligations under the Purchase Agreement.

12.      At the time Defendants entered into the Purchase Agreement, there were three conditions that the Defendants were required to satisfy (the "conditions").

13.     In the event that any of these conditions were not satisfied, RWJBH had the ability to terminate the Purchase Agreement without penalty, and obtain a full or partial refund of the initial payment amount.

14.     The first condition of the Purchase Agreement provided that the 500,000 isolation gowns were to be shipped to RWJBH within two (2) business days of the Effective Date, which was April 28, 2020, and evidence of shipment must be provided the next business day.

15.     The second condition of the Purchase Agreement provided that the isolation gowns were to be delivered no later than fourteen (14) days following the Effective Date.

16.     The third condition of the Purchase Agreement provided that the isolation gowns must weigh 45 grams per square meter, and must meet various other conditions set forth in detail in an exhibit to the Purchase Agreement. RWJBH was not required to accept the gowns if Touchstone failed to comply with the conditions of the Purchase Agreement.

17.     Section 2 of the Purchase Agreement provided that the gowns were not deemed accepted unless and until RWJBH had thoroughly inspected and approved of the gowns subsequent to delivery and that acceptance or non-acceptance would be communicated to Defendants within one (1) business day after delivery, which was to be on or about May 15, 2020, at the latest.

18.     Subject to the satisfaction of these conditions, and in reliance on Defendants' representations that they had the then-present ability to deliver the goods set forth in the Purchase Agreement in a timely fashion, RWJBH agreed to pay Defendants $2,750,000.00 for all 500,000 isolation gowns.

19.     RWJBH agreed to pay Defendants one-half of the total purchase price, or $1,375,000.00, upon full execution of the Purchase Agreement and evidence from Defendants that they could satisfy the conditions.

20.     On or about April 30, 2020, defendant Mead acknowledged receipt of the purchase order from RWJBH and the wire of RWJBH's initial $1,375,000.00 payment, and represented that he would "provide shipping details with a tracking number." A true copy of the April 30, 2020 email is attached hereto as Exhibit B. Upon information and belief, this representation was false, as defendant Mead had no intention to provide the tracking information because he did not have the promised gowns.

### The Defendants' Defaults and Termination of the Purchase Agreement

21.     Defendants did not provide RWJBH with a tracking number and did not deliver the isolation gowns as required.

22.     On or about June 23, 2020, almost two months after entering into the Purchase Agreement, a representative from RWJBH demanded proof from defendants Mead and Touchstone that the gowns were en route or, alternatively, that Defendants provide plaintiff with a full refund of the initial $1,375,000.00 payment. A true copy of the June 23, 2020 email is attached hereto as Exhibit C.

23.     On or about that same day, writing in response to RWJBH's June 23, 2020 email, defendant Mead falsely represented that the gowns were in a warehouse in New Jersey and that he was waiting for paperwork to be finalized. He failed, however, to provide any tracking information to show how or when the gowns had been delivered to the warehouse.

24.     Defendant Mead also falsely represented that the initial $1,375,000.00 payment by RWJBH was used to purchase the gowns from the supplier and that he no longer had the money.

25.     Despite being asked multiple times by RWJBH over the next two months, Defendants never provided a tracking number or proof that the goods existed.

26.     On or about August 7, 2020, RWJBH sent Defendants a Notice of Termination. A true copy of the Notice of Termination is attached hereto as Exhibit D.

27.     Pursuant to Section 7 of the Purchase Agreement, RWJBH requested that the initial payment, in the amount of $1,375,000.00, be returned within one (1) business day.

28.     RWJBH never received the initial payment, or any sum of monies, from Defendants.

## After the Termination of the Purchase Agreement

29.     On or about August 28, 2020, RWJBH received an Airbill from Defendants that was purported to be for the isolation gowns.

30.     On or about September 3, 2020, Defendants issued an email to RWJBH asserting that Defendants were prepared to make delivery of the 500,000 isolation gowns on the following day, September 4, 2020.

31.     In an email to defendant Mead on September 3, 2020, and in light of RWJBH's previous termination of the Franchise Agreement, RWJBH stated that it would only accept delivery of the shipment if all 500,000 isolation gowns were delivered on September 4, 2020 and if the gowns met all of the specification requirements set forth in the Purchase Agreement. A true copy of the September 3, 2020 email is attached hereto as Exhibit E.

32.     Delivery did not take place on September 4, 2020.

33.     On or around September 10, 2020, RWJBH received a second Airbill number from Defendants.

34.     After an internal review, it was determined by RWJBH that the Airbills sent to RWJBH were not related to the shipment of the isolation gowns in any way.  In other words, defendants Mead and Touchstone had apparently sent unrelated Airbills to RWJBH with the

intention to deceive RWJBH to believe that the Airbills were proof of Defendants' good faith. Instead, the Airbills are evidence of Defendants' continuing fraudulent scheme.

35.     On or October 5, 2020, without prior notice from Defendants, a small group of isolation gowns were delivered to RWJBH's agent.

36.     Upon inspection, the shipment was not in accordance with the specifications set forth in the Purchase Agreement. Indeed, aside from other defects, the isolation gowns emitted an odor of some form of a petroleum product.

37.     By letter dated October 7, 2020, RWJBH outlined Defendants' various breaches, expressly rejected the shipment of gowns, and once again demanded a full refund of the initial payment, in the amount of $1,375,000.00. A true copy of the October 7, 2020 letter is attached hereto as Exhibit F.

38.     To date, despite RWJBH's termination of the Purchase Agreement in 2020 and demand for the refund of RWJBH's payment, Defendants have failed to return RWJBH's payment of $1,375,000.00.

## FIRST COUNT
### (Breach of Contract)

39.     Plaintiff repeats, reiterates and realleges each and every allegation made in paragraphs 1 through 38, *supra*, as if more fully set forth herein.

40.     The Purchase Agreement is a valid and enforceable contract by which Defendants agreed to be bound.

41.     Under the Purchase Agreement, Defendants agreed, *inter alia,* to supply 500,000 isolation gowns to RWJBH in accordance with the three conditions.

42.     RWJBH performed its obligation under the Purchase Agreement by providing

Defendants with the initial payment in the amount of $1,375,000.00.

43.     Defendants intentionally did not satisfy the conditions of the Purchase Agreement.

44.     Defendants have refused to return the initial payment after repeated requests by RWJBH.

45.     Defendants have failed to perform, and are therefore in default and in breach of their obligations under the Purchase Agreement.

46.     As a result of the foregoing, Plaintiff has been damaged in the amount of over $1,375,00.00.

**WHEREFORE**, RWJBH demands judgment against Defendants in the amount of the initial payment ($1,375,000.00), which was paid in accordance with the Purchase Agreement, and consequential damages, together with interest, attorneys' fees, and costs of suit.

**SECOND COUNT**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing**
**in the Alternative to Breach of Contract)**

47.     Plaintiff repeats, reiterates and realleges each and every allegation made in paragraphs 1 through 46, *supra*, as if more fully set forth herein.

48.     Pursuant to the laws of the State of New Jersey, every contract carries with it an implied duty of good faith and fair dealing in the performance of the contract.

49.     With respect to the Purchase Agreement, Defendants breached their duty or good faith and fair dealing by, *inter alia*, failing to deliver the gowns to RWJBH pursuant to the terms of the agreement, and refusing to return the initial payment.

50.     Thus, Defendants engaged in deceptive and self-serving practices relating to the performance of the agreement and failed to fulfill their obligation of good faith and fair dealing, which failure has damaged RWJBH.

51.     As a result of the foregoing, Plaintiff has been damaged in the amount of over $1,375,000.00.

**WHEREFORE**, RWJBH demands judgment against Defendants in the amount of the initial payment ($1,375,000.00), which was paid in accordance with the Purchase Agreement, and consequential damages, together with interest, attorneys' fees, and costs of suit.

## THIRD COUNT
### (Common Law Fraud/Misrepresentation)

52.     Plaintiff repeats, reiterates and realleges each and every allegation made in paragraphs 1 through 51, *supra*, as if more fully set forth herein.

53.     By and through the conduct stated above, Defendants made various misrepresentations to RWJBH.

54.     Defendants' various misrepresentations to RWJBH were material, and RWJBH relied upon them.

55.     Defendants knew that these representations were false.

56.     These actions on the part of Defendants constitute fraud in fact and in law.

57.     Plaintiff suffered compensatory damages and is also entitled to punitive damages as a result of the fraudulent and deceitful conduct of Defendants.

**WHEREFORE**, RWJBH demands judgment against Defendants, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, attorneys' fees, costs of suit, and for such other relief that the Court deems equitable and just.

## FOURTH COUNT
### (Unjust Enrichment)

58.     Plaintiff repeats, reiterates and realleges each and every allegation made in

paragraphs 1 through 57, *supra*, as if more fully set forth herein.

59.     At the time of termination of the Purchase Agreement, Defendants were obligated to refund RWJBH in the amount of the initial payment.

60.     Despite its obligation to do so, Defendants failed to refund the initial payment due and owing under the Purchase Agreement, in the amount of $1,375,000.00.

61.     Defendants' failure to refund RWJBH constitutes unjust enrichment and has damaged RWJBH.

**WHEREFORE**, RWJBH demands judgment against Defendants in the amount of the initial payment ($1,375,000.00), which was paid in accordance with the Purchase Agreement, and consequential damages, together with interest, attorneys' fees, and costs of suit.

**Connell Foley LLP**
Attorneys for Plaintiff,
Barnabas Health, Inc.
d/b/a RWJBH Corporate Services Inc.

By:_____ */s/ John Lacey*_____
**JOHN P. LACEY**

Dated: 6/14/21

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**Connell Foley LLP**
Attorneys for Plaintiff,
Barnabas Health, Inc.
d/b/a RWJBH Corporate Services Inc.

By:_____*/s/ John Lacey*_____
      **JOHN P. LACEY**

Dated: 6/14/21

# EXHIBIT A

PURCHASE AGREEMENT - GOWNS - COVID 19

      This Purchasing Agreement ("Agreement"), effective as of the date of the last signature below ("Effective Date"), is by and between TOUCHSTONE TECHNOLOGY CONSULTING OPS. INC. D/B/A TOUCHSTONE HEALTHCARE SOLUTIONS, a for-profit company of the State of Florida, located at 8 Beaver Brook Road, Ridgefield, Connecticut 06877 ("Vendor") and BARNABAS HEALTH, INC. D/B/A RWJBH CORPORATE SERVICES, INC., a not-for-profit corporation of the State of New Jersey with offices located at 95 Old Short Hills Road, West Orange, New Jersey 07052 ("Customer") (each a "Party," and collectively "Parties").

      WHEREAS, Customer desires to purchase from Vendor isolation gowns meeting the specifications and in the quantities set forth in Exhibit A, attached hereto and incorporated herein (collectively, the " Deliverables"), as well as the associated warranty information and the specifications sheet attached to Exhibit A (the "Documentation" and, collectively, with the Deliverables, the " Products") at a purchase price per Product inclusive of all applicable duties, tariffs, taxes and shipping costs as identified in Exhibit A (the "Purchase Price") and pursuant to the delivery schedule set forth below.

      WHEREAS, Customer's obligation to purchase the Products under this Agreement is conditional on Vendor satisfying the following conditions (the "Conditions"):

1.  The total Products identified on Exhibit A or 500,000 Products (the "Shipment") must be shipped within two (2) business day of the Effective Date (the "Required Shipment Date"), and Customer must be provided with evidence that the Shipment has been shipped as of the Required Shipment Date within one (1) business day of the Required Shipment Date, which evidence will include appropriate tracking information from a valid shipping company so that Customer can verify that the Shipment has been shipped to the Delivery Location as of the Required Shipment Date (the "Shipment Requirement".

2.  The Shipment must be delivered to Owens & Minor, 301 Bordentown Hedding Road, RWJBH COI Program, Attn: Deno Erickson, Bordentown, NJ 08505 (the "Delivery Location") no later than fourteen (14) days following the Effective Date (the "Required Receipt Date").

3.  The Products must be 45 Grams per Square Meter Isolation Gowns - Level 2 meeting the specifications set forth in Exhibit A and the other conditions set forth in this Agreement (the "Gown Specification"). Customer shall not be required to Accept (as defined below) or purchase Products that do not meet this Gown Specification.

      If Vendor cannot satisfy any of the Conditions, then Customer may terminate the Agreement without penalty, obtain a full or partial refund of the Initial Deposit, as set forth in the Agreement, and cancel the shipment of any unshipped Product.

      **SUBJECT TO SATISFACTION OF THE AFOREMENTIONED CONDITIONS**, the Parties agree as follows:

1.  **PRODUCTS; COMPENSATION; PAYMENT TERMS.** Vendor agrees to provide to Customer the Products for the Purchase Price and pursuant to the payment terms as set forth in Exhibit A and in accordance with the Conditions set forth above and the other terms and conditions set forth in this Agreement. Customer is a tax-exempt entity and shall therefore not be responsible for taxes with respect to this Agreement. Customer shall provide a tax-exempt certificate to Vendor upon request.

2.  **SHIPMENT TERMS; INSPECTION & ACCEPTANCE OF DELIVERABLES.** Shipment terms shall be F.O.B. Delivery Location. Title and risk of loss to the Deliverables shall not pass from Vendor to Customer until they are delivered to the Delivery Location and Accepted (as defined below) by Customer. No Product shall

863569_1

be deemed to have been accepted until Customer has thoroughly inspected and approved of such Product subsequent to delivery to the Delivery Location (" Accepted" or "Acceptance"). Customer will notify Vendor of Customer's Acceptance or non-Acceptance of the Products within one (1) business day of receipt of the Products at the Delivery Location by sending an email to the following Vendor representative at the following email address: Brian Mead at BMead@touchstoneops.com (the "Notice"). Thus, for example, if the Products are delivered to the Delivery Location on Friday through Sunday, Customer will have until the end of the day on Monday to provide the Notice, and if the Products are delivered to the Delivery Location on Monday, Customer will have until the end of the day on Tuesday to provide the Notice. Products that Customer determines to be defective, non-conforming or otherwise not in accordance with Customer's specifications, including, but not limited to, Products that do not satisfy the Gown Specification (collectively, "Defective") are subject to rejection by Customer and will be held at Vendor's risk for Vendor's instructions, and if Vendor so directs, will be returned at Vendor's expense. If Vendor does not satisfy the Conditions and/or the Customer does not Accept the Shipment, Customer shall have the right to terminate this Agreement and, if applicable, cancel any future shipment of Products without penalty, and receive a refund of any payments made by Customer to Vendor for Products not purchased by Customer under this Agreement, as set forth in Section 7 below, and Customer also shall be entitled to reimbursement from Vendor for any costs incurred by Customer in collecting such refund from Vendor in accordance with Section 7 below.

3. WARRANTY

    3.1. General. Vendor warrants (i) that the Products shall be new, merchantable and free from defects for a period of one (1) month subsequent to Acceptance, or for any longer period set forth in Vendor's warranty provided in the Documentation, (which warranty shall contain the entire term of the Manufacturer's (as defined below) warranty, which Manufacturer warranty shall be passed on to Customer, as set forth below), and if, during this warranty period, there is a defect in any of the Products, at Customer's election, either Vendor shall provide new, non-defective Products without charge to Customer within the time frame requested by Customer or Customer shall be able to return the Defective Product(s) to Vendor at Vendor's expense for a credit equal to the Purchase Price of such Defective Product(s); (ii) that Customer shall receive free, good and clear title to each Product; (iii) that the Products shall conform with the applicable laws, rules, regulations and requirements of each governing or accrediting body having or asserting jurisdiction, including, without limitation, the United States Food and Drug Administration (the "FDA"); (iv) that each Product shall conform with publicly recognized safety standards in effect on the date of Acceptance; (v) Customer's use of the Deliverables, in accordance with the Documentation, will not infringe any third-party's intellectual property rights, security interest, or other encumbrance or right; and (vi) that each Deliverable shall conform to and perform as specified in the Documentation. Vendor will indemnify, defend and hold Customer and its affiliates and its and their officers, trustees, employees and agents harmless for any breach of the foregoing warranties.

    3.2. FDA Approval; Recall. Vendor represents, warrants and covenants that each Product: (i) is approved by the FDA for the purposes set forth in its labeling or instructions for use, (ii) is indicated for medical purposes, and (iii) has received marketing clearance from the FDA under Section 510(k) of the Food and Drug Administration Act for such purposes or is registered with the FDA as exempt from such registration as a Class I or Class II device. Vendor represents and warrants that there have been no citations or corrective actions by the FDA or any equivalent international governmental body against Vendor or the manufacturer of the Products (the "Manufacturer") with respect to the Products, their operation, as applicable, or any part or component thereof. Vendor further represents and warrants and covenants that (i) it is authorized to distribute the Manufacturer's Products, and (ii) it shall pass on to Customer the benefit of any warranties, indemnifications and other protections relating to the Products provided to Vendor by the Manufacturer under the contract between Vendor and Manufacturer relating to the purchase of the Products (the "Vendor-Manufacturer Contract "), and Customer shall be a third party beneficiary under the Vendor-Manufacturer Contract. Vendor shall notify Customer within the

time period required by law or the FDA or other applicable governmental body regarding any Product recalls and shall be responsible for reimbursing Customer for its reasonable and documented costs associated with the actions taken in response to a recall that Vendor or the Manufacturer has instructed Customer to take, whether required by the FDA or other applicable governmental body or voluntarily recommended or required by the Vendor or the Manufacturer, and at no additional charge to Customer Vendor shall replace such Product with a Vendor product that has been evaluated and accepted by Customer as clinically comparable. Vendor will indemnify, defend and hold Customer and its affiliates and its and their officers, trustees, employees and agents harmless for any breach of the foregoing representations and warranties.

4. **CONFIDENTIALITY.** Vendor shall keep confidential all information provided by Customer hereunder as well as the existence of this Agreement (collectively, "Confidential Information"). Vendor agrees to maintain as confidential, and not disclose Confidential Information disclosed to it or use Confidential Information except to provide the Products. The provisions of this Section will not apply to information (i) developed by the Vendor without the use of or access to Customer's proprietary information; (ii) that is or becomes publicly known without a breach of this Agreement by Vendor or its agents; (iii) disclosed to Vendor by a third party not required to maintain its confidentiality; or (iv) that is already known to Vendor at the time of disclosure. This Section 4 shall survive expiration or termination of this Agreement.

5. **INSURANCE.** Vendor shall maintain (i) commercial general liability insurance with limits of not less than one million U.S. dollars ($1,000,000) per occurrence and three million U.S. dollars ($3,000,000) in the annual aggregate; (ii) workers' compensation insurance for the benefit of the Vendor's personnel as required by applicable law, and (iii) employer's practice liability insurance with a minimum single combined limit of liability of not less than one million U.S. dollars ($1,000,000) per occurrence The general liability insurance obtained and maintained by Vendor pursuant to this Agreement shall name RWJ Barnabas Health, Inc. and its affiliates and its and their respective officers, directors, trustees and employees (the "RJWBH Parties") as additional insureds. All certificates of insurance shall provide that Customer be notified at least thirty (30) days prior to the termination, cancellation or material modification of such insurance. A copy of Vendor's insurance certificate is attached hereto as Exhibit B. Vendor shall cause all insurance to remain in full force and effect throughout the term of this Agreement. The foregoing insurance policies shall be on a primary and non-contributory basis to any other insurance that may be provided by, or afforded to, Customer.

6. **LIMITATION OF LIABILITY.** WITH THE EXCEPTION OF A PARTY'S INDEMNIFICATION OBLIGATATATIONS HEREUNDER, GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR VIOLATION OF APPLICABLE LAWS, AND THIRD-PARTY CLAIMS, NEITHER PARTY SHALL BE LIABLE FOR LIQUIDATED, INDIRECT, EXEMPLARY, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, EXPENSES OR COSTS.

7. **TERMINATION.** If Vendor does not satisfy the Conditions set forth above, delivers Defective Products (including Products that do not satisfy the Gown Specification), or if Vendor otherwise materially breaches the Agreement, Customer shall have the right to terminate this Agreement, without financial penalty, upon notice to Vendor, which notice may be delivered by electronic means to the email address set forth in Section 2 above. Upon termination of this Agreement, any payments that have been paid to Vendor by Customer for Products that have not been purchased by Customer under this Agreement, including, but not limited to, payments for Products that have not been Accepted by Customer (collectively "Deposit Refunds") shall be returned to Customer within one (1) business day of the termination of this Agreement. Vendor also shall reimburse Customer for any costs Customer incurs in collecting such Deposit Refunds from Vendor within ten (10) business days of Vendor's receipt of Customer's invoice regarding such collection costs.

8. **COMPLIANCE WITH LAW & POLICY; CHOICE OF LAW.** Vendor shall perform its obligations hereunder in compliance with applicable laws, rules and regulations, including, but not limited to, all applicable anti-

863569_1

bribery and anti-corruption laws, including the Foreign Corrupt Practices Act of 1977, and applicable policies, procedures and protocols of Customer. This Agreement shall be governed by the laws of the State of New Jersey, irrespective of choice- or conflict-of-law principles.

9. NO DISQUALIFIED OR EXCLUDED PARTIES. Vendor represents that (i) it has not been convicted of a criminal offense related to health care; (ii) it is not currently listed by a federal or state agency as debarred, excluded or otherwise ineligible for participation in federally or state funded health care programs or federal procurement or non-procurement program (an "Exclusion Action"); and (iii) is not listed in any applicable exclusion database, including, but not limited to: (a) the United States Department of Health and Human Services' Office of Inspector General's List of Excluded Individuals/Entities; (b) the General Services Administration's Excluded Parties List System; (c) the United States' System for Award Management, (d) the United States Treasury Specially Designated Nationals List; (e) the State of New Jersey Consolidated Debarment Report and (f) the Specially Designated Nationals and Blocked Persons list and all other sanctions lists administered by the United States Treasury's Office of Foreign Assets Control (collectively, the "Exclusion Databases"). For purposes of this paragraph, "Vendor" is defined as the entity entering into this contract, and/or its principals, employees, directors and officers and shareholders (provided, however, that, if Vendor is publicly traded, the term "Vendor" shall not include shareholders owning publicly traded shares of Vendor). Vendor further agrees that it will immediately notify Customer in the event that Vendor has been convicted of a criminal offense related to healthcare, been subject to an Exclusion Action and/or has been listed in any Exclusion Database. Customer will have the immediate right to terminate this Agreement, without penalty, if Vendor has been convicted of a criminal offense related to healthcare, has been subject to an Exclusion Action and/or has been listed in any Exclusion Database.

10. NOTICE. Except as otherwise set forth in this Agreement, any notice required to be given will be deemed to have been served properly if sent via nationally recognized overnight courier (e.g., FedEx, UPS, USPS) or via certified mail with delivery confirmation and properly addressed to the Parties. Notice will deemed given on the delivery date set forth in the delivery confirmation. Notice to Customer shall be sent to the following addresses: (i) RWJBarnabas Health, 2 Crescent Place, Oceanport, NJ 07757, Attention: Phil Maneri, System Vice President, Sourcing and Contracts; and (ii) RWJBarnabas Health, 95 Short Hills Road, West Orange, NJ 07052, Attention: David A. Mebane, Esq., General Counsel.

11. MISCELLANEOUS. This Agreement (i) shall not be assigned, delegated or transferred by Vendor without the prior written consent of Customer; (ii) is intended to inure only to the benefit of Vendor and Customer, and shall not be construed to create any right in any third-party; (iii) shall not be modified or amended except by way of a written agreement duly executed by each Party; and (iv) shall supersede any conflicting or additional provision in any requisition, purchase order, invoice, or other document issued by a Party with respect to the subject matter thereof. The failure of either Party to enforce any provision of this Agreement shall not be deemed a waiver of such right to enforce such provision. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision thereof, which shall remain in full force and effect. This Agreement, together with Exhibit A, constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous negotiations, representations, agreements and understandings of a Party relating hereto, whether written or oral. In the event of a conflict between any provision of this Agreement and the provision of any other document executed by the Parties that relates to this Agreement, the provision of this Agreement shall prevail. To the extent applicable, Vendor agrees that until the expiration of four (4) years after furnishing Products pursuant to the Agreement, Vendor shall make available, upon request of the Comptroller General, or any of their duly authorized representatives, this Agreement and the books, documents and records of Vendor that are necessary to certify the nature and extent of the costs for which Customer seeks reimbursement. Any provision of this Agreement that due to its nature is intended to survive termination of this Agreement shall survive termination of this Agreement. This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument. The Parties

863569_1

agree to accept and be bound by electronically transmitted copies of this Agreement, including electronic signatures of the Parties.

IN WITNESS HEREOF, Customer and Vendor have caused this Agreement to be signed and delivered by their duly authorized agents as of the Effective Date.

BARNABAS HEALTH, INC.
D/B/A RWJBH CORPORATE SERVICES, INC.

Signature: _Phil Maneri_

Name:      Phil Maneri

Title:      VP Contracting

Date:      April, 28 2020

TOUCHSTONE TECHNOLOGY CONSULTING OPS. INC.
D/B/A TOUCHSTONE HEALTHCARE SOLUTIONS

Signature: _____

Name:      Brian W. Mead

Title:      Managing Partner

Date:      April, 28, 2020

863569_1

<u>EXHIBIT A</u>

<u>PRODUCTS, PURCHASE PRICE & PAYMENT TERMS</u>

1.  **Product Specifications/Documentation.** The Products shall be 45-50 GSM (Grams per Square Meter), FDA-Approved AAMI Isolation Gowns - Level 2 meeting the attached specifications and the associated Documentation, including, without limitation, the warranty information attached hereto or provided within one (1) business day following the Effective Date.

2.  **Purchase Price.** Customer shall pay Vendor for the Products at a purchase price per Product inclusive of all applicable duties, tariffs, taxes and shipping costs of Five U.S. Dollars and Fifty U.S. Cents ($5.50) (the "<u>Unit Purchase Price</u>") for a total purchase price for all 500,000 Products of Two Million and Seven Hundred and Fifty Thousand U.S. Dollars ($2,750,000.00) (the "<u>Total Purchase Price</u>").

3.  **Payment Terms.** Customer shall pay Vendor the Total Purchase Price according to the following payment schedule:

    a.  <u>Initial Deposit.</u> Following full execution of this Agreement and the provision of evidence that is reasonably satisfactory to Customer that Vendor can satisfy the Conditions set forth in the Agreement, Customer shall pay to Vendor via wire transfer One Million Three Hundred and Seventy-Five Thousand U.S. Dollars ($1,375,000.00), which represents a deposit of Fifty Percent (50%) of the Total Purchase Price (the "<u>Initial Deposit</u>"). For the avoidance of doubt, the Parties acknowledge and agree that the entire amount of the Initial Deposit shall be returned to Customer in the event that Customer does not purchase any Products under the Agreement (e.g., because Vendor is not able to satisfy the Conditions and/or Customer does not Accept the Products, and Customer terminates the Agreement in accordance with its terms), as set forth in Section 7 of the Agreement. Likewise, Customer shall be entitled to a pro-rata refund of the Initial Deposit to the extent that Customer does not purchase at least Fifty Percent (50%) of the Shipment, such as, for example, if Vendor is unable to provide all of the Products by the Required Receipt Date or some (but not all) of the Shipment is not Accepted by Customer and/or the Customer terminates the Agreement in accordance with its terms prior to receipt and Acceptance of at least 250,000 Products. As specified in Section 7, the Initial Deposit (or the applicable pro rata portion thereof) shall be returned to Customer within one (1) business day of the termination of the Agreement. As specified in Section 7, Vendor also shall reimburse Customer within ten (10) business days of receipt of a written invoice therefore for any costs that Customer incurs in collecting from Vendor any refunds of the Initial Deposit (or applicable pro rata portion thereof) that Vendor is obligated to pay to Customer under the Agreement.

    b.  <u>Final Payment.</u> Within one (1) business day of Customer's Acceptance of the Shipment (or any portion thereof), Customer shall pay to Vendor One Million Three Hundred and Seventy-Five Thousand U.S. Dollars ($1,375,000.00), which represents the remaining Fifty Percent (50%) of the Total Purchase Price, or, if less than all of the Products are delivered by the Required Receipt Date and Accepted by Customer or Customer Accepts less than all of the Products in the Shipment, the applicable portion of the Total Purchase Price due to Vendor for the Products received and Accepted by Customer in accordance with the Agreement.

EXHIBIT B

VENDOR'S INSURANCE CERTIFICATE

SEE ATTACHED

863569_1

# EXHIBIT B

**Lauren Zalepka**

| | |
|---|---|
| **From:** | Massey, Abiah |
| **Sent:** | Thursday, April 30, 2020 9:25 AM |
| **To:** | Strollo, Paula; Maneri, Philip; Checchio, Diane; Massey, Abiah |
| **Subject:** | FW: TAG#372-001 - PO# POSBC0000022487 - RWJBarnabas Health |
| **Attachments:** | TOUCHHEALTH.png |

Hi All,
Vendor's acknowledgment is below. Thank you.

**From:** Brian Mead
**Sent:** Thursday, April 30, 2020 9:19 AM
**To:** Massey, Abiah
**Cc:** Mike Madupati ; Brittany Bhavani ; CA Rajesh ; CA A Rajesh ; Brian Mead
**Subject:** Re: TAG#372-001 - PO# POSBC0000022487 - RWJBarnabas Health


## *** This is an External Email ***
Abiah:

It was a pleasure speaking with you this morning. I apologize for not acknowledging this mail yesterday although I was entrenched in a number of things at the time of receipt.

Touchstone Healthcare Solutions, and its Parent company Touchstone Technology Consulting Ops. Inc. acknowledge receipt of the attached email, including the wire of the down payment, and Purchase Order. Touchstone Healthcare Solutions has processed most of the order and will finalize the details with the Manufacturer this morning.

Upon receipt of the official Tracking number for your 500K AAMI Level 2 Isolation Gowns, we will provide you the shipping details with a tracking number so as to account for your order.

Abiah, I thank you for your Trust, please don't hesitate to call me at any time with any questions. We are here to serve you, and RW Barnabas. Thank you again, we look forward to working with you and the RW Barnabas Team.

Stay Well, Stay Safe.

1

Sincerely Yours,

Brian W. Mead
Managing Partner
Touchstone Healthcare Solutions, (DBA)
*"In Touchstone We Trust"*
203-825-4000 Corporate
203-885-6772 Mobile/Text
www.touchstoneops.com
www.sapknowledge.training



---

**From:** Massey, Abiah <Abiah.Massey@rwjbh.org>
**Sent:** Thursday, April 30, 2020 8:58 AM
**To:** Brian Mead <BMead@touchstoneops.com>
**Subject:** RE: TAG#372-001 - PO# POSBC0000022487 - RWJBarnabas Health

Brian,
Can you please confirm receipt of PO ? Thank you.

Best,
**Abiah Massey-Gill**
Senior Buyer | Purchasing
8:00am - 4:00pm EST
2 Crescent Place | Oceanport | NJ 07757
☎ 732-923-8641 | ✉ Abiah.Massey@RWJBH.org

# RWJBarnabas
## HEALTH
Customer Service is ready to answer your questions about **requisitions, purchase order status, invoices, payments and product returns**. Please call Monday – Friday from 8:30 to 3:30 at (732-443-3448) or via email at customerservice@RWJBH.org

---

# RWJBarnabas
## HEALTH

NOTICE: This e-mail and its attachments, if any, may contain legally privileged and/or confidential information protected by law. It is intended only for use by the named addressee(s). If you are not the intended recipient of this e-mail, any dissemination, distribution or copying of this e-mail and its attachments, if any, is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by telephone or by reply e-mail, and permanently delete this e-mail and the attachments, if any, and destroy any printouts.

From: Massey, Abiah
Sent: Wednesday, April 29, 2020 2:48 PM
To: 'BMead@touchstoneops.com' <BMead@touchstoneops.com>
Cc: Strollo, Paula <Paula.Strollo@rwjbh.org>; Maneri, Philip <Philip.Maneri@rwjbh.org>; Checchio, Diane <Diane.Checchio@rwjbh.org>
Subject: TAG#372-001 - PO# POSBC0000022487 - RWJBarnabas Health
Importance: High

Brian,

Attached please find PO# POSBC0000022487, and payment confirmation is below for your review. Can you please confirm this order ? Thank you.

Payment Reference #7400017559 in the amount of $1,375,000.00 was processed via ACH today.

Thank you.

| Business Unit | Voucher ID | Advice Seq | Advice Date | Invoice Number | Gross Paid Amount |
|---|---|---|---|---|---|
| SBC01 | 00269105 | 1 | 04/29/2020 | POSBC0000022487 | 1,375,000.00 |

Best,
**Abiah Massey-Gill**
Senior Buyer | Purchasing
8:00am - 4:00pm EST
2 Crescent Place | Oceanport | NJ 07757
☎ 732-923-8641 | ✉ Abiah.Massey@RWJBH.org

# RWJBarnabas
## HEALTH

Customer Service is ready to answer your questions about **requisitions, purchase order status, invoices, payments and product returns.** Please call Monday – Friday from 8:30 to 3:30 at (732)-443-3448) or via email at customerservice@RWJBH.org

# Purchase Order

## RWJBarnabas
### HEALTH

**CHANGE ORDER**     **Dispatch via E-Mail**

| Purchase Order | | Date | Revision | | Page |
|---|---|---|---|---|---|
| POSBC0000022487 | | 04/29/2020 1 - 04/29/2020 | | | 1 |
| Payment Terms | | Freight Terms | | | Ship Via |
| Due Immediately | | FOB destination | | | FED EX |
| Buyer | | Phone | | | Currency |
| Massey-Gill,Abiah | | | | | USD |

### Saint Barnabas Corporation
95 Old Short Hills Rd
West Orange NJ 07052
United States

**Vendor**    0000209063
**Vendor Ac#:**
**Vendor Ph#:**

TOUCHSTONE TECHNOLOGY CONSULTING OPS INC
TOUCH STONE HEALTH CARE SOLUTION
8 BEAVER BROOK ROAD
RIDGEFIELD CT 06877

**Ship To:**   301 Bordentown Hedding Road
                ATTN: Deno Erickson -RWJBH-COI Program
                Bordentown NJ 08505
                United States

**Bill To:**   P.O. Box 337         **Total # of PO Lines: 2**
            West Long Branch NJ 07764
            United States

**Tax Exempt? Y**     **Tax Exempt ID:** 221-494-440        **Replenishment Option:** Standard

| Ln-Sch | Vendor Item/Mfg Item/Description | Mfg ID | Quantity | UOM | PO Price | Extended Amt |
|---|---|---|---|---|---|---|
| 1- 1 | AAMI LEVEL 2 | | | EA | | |
| | AAMI LEVEL 2 | | 250,000.00 | | 5.50 | 1,375,000.00 |
| | Isolation Gowns AAMI Level 2 | | | | | |
| | | | | Schedule Total | | 1,375,000.00 |

*** Payment Terms : 50% down and 50% due upon Receipt ***

Invoice#INV001 Attached for Down Payment

                                   Item Total        1,375,000.00

| Ln-Sch | Vendor Item/Mfg Item/Description | Mfg ID | Quantity | UOM | PO Price | Extended Amt |
|---|---|---|---|---|---|---|
| 2- 1 | AAMI LEVEL 2 | | | EA | | |
| | | | 250,000.00 | | 5.50 | 1,375,000.00 |
| | Isolation Gowns AAMI Level 2 | | | | | |
| | | | | Schedule Total | | 1,375,000.00 |

*** Payment Terms : 50% down and 50% due upon Receipt ***

                                   Item Total        1,375,000.00

                                Total PO Amount        2,750,000.00

*** PURCHASE AGREEMENT ATTACHED ***

VENDOR CONTACT :
Brian W. Mead
Managing Partner
203-825-4000 Corporate
203-885-6772 Mobile/Text
BMead@touchstoneops.com

**Authorized Signature**

# RWJBarnabas
## HEALTH

# Purchase Order

**CHANGE ORDER**                    Dispatch via E-Mail

| Purchase Order | Date | Revision | Page |
|---|---|---|---|
| POSBC0000022487 | 04/29/2020 | 1 - 04/29/2020 | 2 |
| Payment Terms | Freight Terms | | Ship Via |
| Due Immediately | FOB destination | | FED EX |
| Buyer | Phone | | Currency |
| Massey-Gill,Abiah | | | USD |

## Saint Barnabas Corporation
95 Old Short Hills Rd
West Orange NJ 07052
United States

Vendor      0000209063
Vendor Ac#:
Vendor Ph#:

TOUCHSTONE TECHNOLOGY CONSULTING OPS INC
TOUCH STONE HEALTH CARE SOLUTION
8 BEAVER BROOK ROAD
RIDGEFIELD CT 06877

Ship To:  301 Bordentown Hedding Road
ATTN: Deno Erickson -RWJBH-COI Program
Bordentown NJ 08505
United States

Bill To:  P.O. Box 337          Total # of PO Lines: 2
West Long Branch NJ 07764
United States

Tax Exempt? Y      Tax Exempt ID: 221-494-440                    Replenishment Option:  Standard

| Ln-Sch | Vendor Item/Mfg Item/Description | Mfg ID | Quantity | UOM | PO Price | Extended Amt |
|---|---|---|---|---|---|---|

COMMENTS:

The Purchase Order Number must appear on each package and all correspondence to include the Packing Slip, Invoice and Bill of lading. Product substitutions and price changes may not be made without prior approval by the Purchasing Department. Terms and Conditions are available upon request. This agreement is governed by the laws of the State of New Jersey.

IMPORTANT - INVOICING ADDRESS HAS CHANGED.

Please send your invoice to either the PO Box listed below or the email address listed below:

PO Box 337, West Long Branch, NJ  07764

EMAIL: APInvoices@rwjbh.org

RWJBarnabas Health and its affiliates is an equal opportunity employer and federal contractor or subcontractor. Consequently, the parties agree that, as applicable, they will abide by the requirements of 41 CFR 60-1.4(a), 41 CFR 60-300.5(a) and 41 CFR 60-741.5(a) and that these laws are incorporated herein by reference. These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity or national origin. These regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, protected veteran status or disability. The parties also agree that, as applicable, they will abide by the requirements of Executive Order 13496 (29 CFR Part 471, Appendix A to Subpart A), relating to the notice of employee rights under federal labor laws.

Vendor shall supply a completed Manufacturer Disclosure Statement for Medical Device Security (MDS2) in accordance with the HIMSS (Healthcare Information and Management Systems Society).  This is a requirement for HIPAA e-PHI documentation.

No medical device containing e-PHI can be placed into operation at any RWJBH affiliate location without receiving the express approval from the affiliate Information Security Officer.

The Medical Equipment Check-off List and SC-6 document must be filed with the CIO or IT Director.

Specific Recommendations for outside-serviced equipment:

-      Vendor to certify operation on-site prior to patient use and provide documentation.
-      If Preventive Maintenance(s) are required during the warranty period, consider if the vendor should supply and document.
-      Provision should be made to continue after warranty Preventive Maintenance(s) without a gap in Preventive Maintenance intervals.

General Provisions for medical equipment:

-      Vendor should supply one service manual and one additional operator manual for BME document file.
-      If a service manual is not provided then documentation of inspection or PM intervals needs to be provided.
-      Consider service personnel training.
-      All electrical equipment within a patient care area must comply with UL60601-01, NFPA 99, and any other applicable electrical safety standards.
-      All medical equipment with clinical alarms is to be assessed in relation to the JCAHO PSG requirement and hospital policy.
-      All infusion devices are to comply with the JCAHO IV Pump PSG.

Authorized Signature

**RWJBarnabas**
HEALTH

## Purchase Order

**CHANGE ORDER**                    **Dispatch via E-Mail**

| Purchase Order | Date | Revision | Page |
|---|---|---|---|
| POSBC0000022487 | 04/29/2020 1 - 04/29/2020 | | 3 |
| Payment Terms | Freight Terms | | Ship Via |
| Due Immediately | FOB destination | | FED EX |
| Buyer | Phone | | Currency |
| Massey-Gill,Abiah | | | USD |

### Saint Barnabas Corporation
95 Old Short Hills Rd
West Orange NJ 07052
United States

Vendor        0000209063
Vendor Ac#:
Vendor Ph#:

TOUCHSTONE TECHNOLOGY CONSULTING OPS INC
TOUCH STONE HEALTH CARE SOLUTION
8 BEAVER BROOK ROAD
RIDGEFIELD CT 06877

Ship To:   301 Bordentown Hedding Road
ATTN: Deno Erickson -RWJBH-COI Program
Bordentown NJ 08505
United States

Bill To:   P.O. Box 337          Total # of PO Lines: 2
West Long Branch NJ 07764
United States

Tax Exempt?  Y      Tax Exempt ID:  221-494-440                Replenishment Option:  Standard

| Ln-Sch | Vendor Item/Mfg Item/Description | Mfg ID | Quantity | UOM | PO Price | Extended Amt |
|---|---|---|---|---|---|---|

- All telemetry purchases require FCC registration.
- Consult Facilities Engineering regarding power and infrastructure needs.
- Contact BME for inventory after setup and before patient use.

All price information submitted to RWJBarnabas Health is proprietary and may be utilized at the discretion of RWJBarnabas Health.

If shipping charges contractually apply, ship Bill 3rd Party via FedEx Account # 321460291. FOB Destination. If combined shipping weight exceeds 150 lbs., call 888-457-5851 for carrier instructions prior to shipping. Insert our PO# in recipient 2nd address field.

Authorized Signature

# EXHIBIT C

**Lauren Zalepka**

| | |
|---|---|
| **From:** | Brian Mead <BMead@touchstoneops.com> |
| **Sent:** | Tuesday, June 23, 2020 5:00 PM |
| **To:** | Checchio, Diane |
| **Cc:** | Maneri, Philip; Mike Madupati |
| **Subject:** | Re: Touchstone Gowns |
| **Attachments:** | touchhealthlogo.png |
| | |
| **Importance:** | High |

\*\*\* This is an External Email \*\*\*

Diane:

I have read your email although as mentioned in my previous mail, it was an estimation of timely delivery, and never a guarantee. Due to the circumstances, it is impossible to guarantee, or control delivery timelines do to the governmental Red Tape and Customs Challenges. I understand the frustration. I at no point in my discussions ever wanted to delay the process and by all indications based on what my original discussions were, the opening of India allowing PPE into the USA would streamline the process. This I felt was clearly a positive due to the challenges of both Quality and delivery from China.

Unfortunately, the RW Barnabas was one of the first orders to be allocated and shipped by the supplier, from India, and due to the red tape associated with the new export agreement, between the USA and India, there is a communication lag and disconnect between the administration bureaucracies and the field customs.

The RW Barnabas Gowns are shipped and sitting in a warehouse in New Jersey, and as of today, I have learned there is some paperwork they await to allow complete clearance. As mentioned, and conveyed from our original discussions, all monies deposited as consideration for the purchase of these gowns were used to purchase them from the supplier. The Supplier as mentioned has repeatedly claimed they have performed, and have sent the goods as per the sales order agreement. The supplier, after continuous requests for a refund, refuses such, as they state they have shipped and performed, and the goods are no longer in their control.

1

To that end, as mentioned before, we are working diligently through the RedTape and will deliver the goods in its entirety. Touchstone Healthcare Solutions is not in a position to refund the monies forwarded for the procurement of the gowns as the money is no longer in our control. I completely understand the level of consternation this has created, although I can assure you and all others, I will make sure we deliver. Please be advised we have engaged an international Legal council to assist in this process, and with the challenge. Together we are looking to accelerate the issue.

Diane, I have been in business for over thirty years, acting as a true fiduciary, where I am a sincere "Trusted Advisor". I pride myself on my track record, and reputation my company is known. Although not infallible, we stay with our clients, face the unattractive situations head-on, and work through the issues. I know this is not what you or the powers within want to hear, although it is the reality.

Again, I will keep you abreast of the advancements with the administrative Red Tape, once the Isolation Gowns are released I will notify you. I sincerely am pained having to face this situation, as I know you were a supporter of Touchstone Healthcare Solutions moving forward in establishing Touchstone Healthcare as an authorized vendor of RW Barnabas. I know this seems to be a bad decision at this point, although I assure you and RW Barnabas, we will make it right.

Thank You for your consideration, I will be in touch.

Sincerely Yours,

Brian W. Mead
Managing Partner
Touchstone Healthcare Solutions (DBA)
203-825-4000 Corporate
203-885-6772 Mobile/Text
www.touchstoneops.com
www.sapknowledge.training



**From:** Checchio, Diane
**Sent:** Tuesday, June 23, 2020 2:12 PM
**To:** Brian Mead
**Cc:** Maneri, Philip
**Subject:** Touchstone Gowns
Brian,

We need confirmation on the gowns by tomorrow. If not we need to move on and expect a full refund. We ordered the gowns with the expectation we would receive them in 7-10 days. I could understand a slight delay but we still don't have proof these were shipped.
Please advise ASAP via email.
Thank you,
Diane
Diane Checchio
RWJBarnabas Health
diane.checchio@rwjbh.org

# RWJBarnabas
## HEALTH

NOTICE: This e-mail and its attachments, if any, may contain legally privileged and/or confidential information protected by law. It is intended only for use by the named addressee(s). If you are not the intended recipient of this e-mail, any dissemination, distribution or copying of this e-mail and its attachments, if any, is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by telephone or by reply e-mail, and permanently delete this e-mail and the attachments, if any, and destroy any printouts.

# EXHIBIT D

# RWJBarnabas
## HEALTH

**Barry H. Ostrowsky**
*President and*
*Chief Executive Officer*

August 7, 2020

**VIA CERTIFIED MAIL, R.R.R.**
Brian W. Mead
Managing Partner
Touchstone Technology Consulting Ops., Inc.
D/B/A Touchstone Healthcare Solutions
8 Beaver Brook Road
Ridgefield, Connecticut 06877
*EMAIL: BMead@touchstoneops.com*

     **Re:**    **Notice of Termination and Demand for Full Refund of Initial Deposit**
             **[PO Number POSBC0000022487]**

Dear Mr. Mead:

     Reference is made to the Purchase Agreement for Gowns – COVID-19 Services, dated April 28, 2020 (the "Agreement"), by and between Touchstone Technology Consulting Ops. Inc. d/b/a Touchstone Healthcare Solutions ("Touchstone"), and Barnabas Health, Inc. d/b/a RWJBH Corporate Services, Inc. ("RWJBH"). Touchstone has failed to perform its obligations under the Agreement, including failure to deliver the gowns ("Products") in accordance with the terms of the Agreement. Accordingly, RWJBH hereby terminates the Agreement, effective August 7, 2020 (the "Termination Date").

     Touchstone shall refund RWJBH the entire Initial Deposit paid of $1,375,000, within one (1) business day of the Termination Date. Payment shall be made by Touchstone to RWJBH in accordance with the wire transfer instructions attached to this letter. In the event the Initial Deposit is not received by RWJBH in full within one (1) business day of the Termination Date, RWJBH reserves the right to exercise any and all rights and remedies available to it at law or in equity to enforce its rights under the Agreement, including but not limited to collection of the Initial Deposit, any interest available thereon, and any and all legal fees, expenses and other costs of collection.

     RWJBH appreciates your cooperation. Please feel free to contact me with any questions.

                              Very truly yours,

                              Robert Taylor
                              SVP Supply Chain

Cc:  P. Maneri
      RWJBH General Counsel

95 Old Short Hills Road
West Orange, NJ 07052

**RWJBarnabas**
**HEALTH**

NOTICE: This e-mail and its attachments, if any, may contain legally privileged and/or confidential information protected by law. It is intended only for use by the named addressee(s). If you are not the intended recipient of this e-mail, any dissemination, distribution or copying of this e-mail and its attachments, if any, is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by telephone or by reply e-mail, and permanently delete this e-mail and the attachments, if any, and destroy any printouts.

# EXHIBIT E

**Lauren Zalepka**

| | |
|---|---|
| **From:** | Taylor, Bob <Bob.Taylor@rwjbh.org> |
| **Sent:** | Thursday, September 3, 2020 12:22 PM |
| **To:** | BMead@touchstoneops.com |
| **Cc:** | Maneri, Philip; Bierds, Margot; Lauren Zalepka; Retterer, Brian; Fitzgerald, Tim |
| **Subject:** | Delivery of Isolation Gowns |

**Importance:**   High

Mr. Mead,

I have been made aware from Owens and Minor that you are prepared to make delivery on September 4, 2020 the 500,000 isolation gowns that were ordered with Touchstone Technology Consulting Ops Inc on Purchase Order number POSBC0000022487.

Although you are in breach of the agreement, specifically paragraph 1 in which you agreed to ship product within two (2) business days of the effective date of April 28, 2020, we are prepared to accept shipment of the product to resolve and close this issue provided the following;

Touchstone Technology Consulting Ops Inc will deliver to the Owens and Minor Distribution Center located in Bordentown, NJ as stated in paragraph two of the agreement, but not less than all, of the 500,000 isolation gowns and,

1. Upon internal inspection we validate that the gowns meet the specification requirements stated in paragraph 3 and further detailed in Exhibit A

If Touchstone Technology Consulting Ops Inc is not able to deliver all, but not less than all, of the 500,000 gowns to the Owens and Minor Bordentown warehouse on September 4, 2020 and/or the gowns do not meet the specifications as described in the agreement we will not accept the product and will refuse any further attempts to deliver product to RWJ Barnabas Health or any of our agents. Additionally we will pursue all legal courses of action to recoup the advanced funds due to breach of agreement.

Please confirm via email by replying to all on this email that you have received this communication and that the delivery for September 4, 2020 will constitute all, but not less than all, of the contracted product.

Sincerely,

Robert Taylor
SVP Supply Chain


Bob Taylor
SVP Supply Chain RWJBarnabas Health
2 Crescent Place | Oceanport, NJ 07757
o: 732-923-8634
e: Bob.Taylor@rwjbh.org

# EXHIBIT F

# RWJBarnabas
## HEALTH

Barry H. Ostrowsky
*President and*
*Chief Executive Officer*

October 7, 2020

**VIA CERTIFIED MAIL, R.R.R.**
Brian W. Mead
Managing Partner
Touchstone Technology Consulting Ops., Inc.
D/B/A Touchstone Healthcare Solutions
8 Beaver Brook Road
Ridgefield, Connecticut 06877
*EMAIL: BMead@touchstoneops.com*

> **Re: Notice of Termination and Demand for Full Refund of Initial Deposit**
> **[PO Number POSBC0000022487]**

Dear Mr. Mead:

Reference is made to the Purchase Agreement for Gowns – COVID-19 Services, dated April 28, 2020 (the "Agreement"), by and between Touchstone Technology Consulting Ops. Inc. d/b/a Touchstone Healthcare Solutions ("Touchstone"), and Barnabas Health, Inc. d/b/a RWJBH Corporate Services, Inc. ("RWJBH").  Enclosed please find prior correspondence including August 7, 2020 notice of termination and September 3, 2020 email regarding failed delivery of September 4, 2020.

I am once again writing to advise Touchstone continues to be in breach of the Agreement and to demand full refund of the entire Initial Deposit paid of $1,375,000, within one (1) business day of the date of this letter in accordance with the wire transfer instructions attached to this letter. In the event the Initial Deposit is not received by RWJBH in full within one (1) business day of the date of this letter, RWJBH reserves the right to exercise any and all rights and remedies available to it at law or in equity to enforce its rights under the Agreement, including but not limited to collection of the Initial Deposit, any interest available thereon, and any and all legal fees, expenses and other costs of collection.

As outlined in the attached August 7, 2020 letter, Touchstone failed to deliver the gowns ("Products") in accordance with the terms of the Agreement (within two business days of the effective date of April 28, 2020). Via email dated September 3, 2020 (enclosed) we did provide Touchstone with an opportunity to comply with the contract, despite the ongoing breach of same, by agreeing to the proposed September 4, 2020 delivery day by advising we would accept

> *all, but not less than all, of the 500,000 isolation gowns and, upon internal inspection we validate that the gowns meet the specification requirements stated in paragraph 3 and further detailed in Exhibit A.  If Touchstone Technology Consulting Ops Inc is not able to deliver all, but not less than all, of the 500,000 gowns to the Owens and Minor Bordentown warehouse on September 4, 2020 and/or the gowns do not meet*

*the specifications as described in the agreement we will not accept the product and will refuse any further attempts to deliver product to RWJ Barnabas Health or any of our agents.*

Despite making arrangements and ensuring personnel were ready and waiting for the September 4, 2020 shipment, no product arrived.

On Monday October 5, 2020, a small portion of the contracted amount of product was delivered without prior communication with RWJBH.  Not only does Touchstone continue to be in breach of the contract for delivery of less than the contracted amount, despite months passing, inspection of the product provided revealed same did not meet the terms of the contract, as specified in paragraph 3 and further detailed in Exhibit A.

Indeed, upon inspection many boxes were noted to be covered in black particulate material had a musty/mildew odor; the product itself had an odor of petroleum when opened; many boxes were wet beneath the shrink wrap; the manufacturer seal of many of the boxes appeared to be broken and re-taped; the gowns were too small to be secured closed without tearing; and many were clearly improperly made with velcro closures glued rather than stitched, small, loose cuffs, etc.

As a result, RWJBH hereby rejects the products delivered not only because same were woefully out of the time period contemplated by the contract and after notice of termination of same, but also because the product does not meet the specifications as outlined in the contract.

RWJBH appreciates your cooperation.  Please feel free to contact me with any questions. RWJBH appreciates your cooperation.  Please feel free to contact me with any questions.

Very truly yours,

Robert Taylor
SVP Supply Chain

Cc:  P. Maneri
       RWJBH General Counsel

95 Old Short Hills Road
West Orange, NJ 07052





